UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

February 2017 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>             v.<br><br>PACIFIC EUROTEX CORP.,<br>MORAD NEMAN,<br>  aka "Ben Neman,"<br>HERSEL NEMAN,<br>ALMA VILLALOBOS, and<br>MEHRAN KHALILI,<br><br>             Defendants. | CR No. 14-521(A)-JAK<br><br>F I R S T<br>S U P E R S E D I N G<br>I N D I C T M E N T<br><br>[18 U.S.C. § 1956(h): Conspiracy to Launder Monetary Instruments; 18 U.S.C. §§ 1956(a)(1)(B)(i), (ii): Money Laundering; 18 U.S.C. § 371: Conspiracy; 31 U.S.C. §§ 5324(a)(3),(d)(2): Structuring Financial Transactions to Evade Reporting Requirements; 31 U.S.C. §§ 5331(a), 5322(b), 5324(b)(1), (d)(2): Failure to File Report of Currency Transaction in a Non-financial Trade or Business; 26 U.S.C. § 7206(1): Making and Subscribing to a False Tax Return; 26 U.S.C. § 7206(2): Aiding, Assisting, and Procuring the Filing of a False Tax Return; 18 U.S.C. § 982(a)(1): Criminal Forfeiture; 31 U.S.C. § 5317: Criminal Forfeiture] |

The Grand Jury charges:

COUNT ONE

[18 U.S.C. § 1956(h)]

A.    INTRODUCTION

At all times relevant to this First Superseding Indictment:

1.    Defendant PACIFIC EUROTEX CORP. ("PACIFIC EUROTEX"), incorporated in 2001 in the State of California, was located at 1620 South Los Angeles Street, Suite B, Los Angeles, California, and/or 1433 South Griffith Avenue, Los Angeles, California.

2.    Defendant PACIFIC EUROTEX was a trade or business operating as an importer and exporter of textiles with numerous customers in Mexico, Guatemala, Colombia, and Peru.

3.    The Internal Revenue Service of the United States Treasury Department ("IRS"), was an agency responsible for administering and enforcing the tax laws of the United States and collecting the taxes owed to the Treasury of the United States by its citizens.

4.    Defendant MORAD NEMAN, also known as "Ben Neman" ("MORAD NEMAN"), was the Chief Executive Officer of defendant PACIFIC EUROTEX.

5.    Defendant HERSEL NEMAN was the Chief Financial Officer of defendant PACIFIC EUROTEX.

6.    Defendant ALMA VILLALOBOS ("VILLALOBOS") was an accountant and bookkeeper employed by defendant PACIFIC EUROTEX.

7.    Defendant MEHRAN KHALILI ("KHALILI") was employed by defendant MORAD NEMAN.

8.    Defendant PACIFIC EUROTEX opened and maintained the following business bank accounts with authorized signers defendants

2

MORAD NEMAN, and HERSEL NEMAN, and an unindicted co-conspirator ("UCC-1"):

a.    BBCN bank account number xxxx3438, opened on December 10, 2009, in the name of defendant PACIFIC EUROTEX;

b.    Israel Discount Bank ("IDB") account number xxx1347, opened on April 12, 2002, in the name of defendant PACIFIC EUROTEX;

c.    Pacific City Bank ("PCB") account number xxx0537, opened on April 26, 2013, in the name of defendant PACIFIC EUROTEX.

9.    Defendant MORAD NEMAN also obtained and held power of attorney for a personal bank account at Wells Fargo Bank, account number xxxxxx3136, opened in the name of an unindicted co-conspirator ("UCC-2") with defendant MORAD NEMAN and UCC-2 as authorized signers.

10.    Defendant PACIFIC EUROTEX used an accounting software system known as "MOD2" to record its sales and receipts of payment.

11.    Defendant PACIFIC EUROTEX used MOD2 to compile information regarding its sales and receipts, which defendants MORAD NEMAN and HERSEL NEMAN instructed defendant VILLALOBOS to send to the accountant/tax preparer for defendant PACIFIC EUROTEX to use in preparing defendant PACIFIC EUROTEX's annual tax returns.

**The "Black Market Peso Exchange"**

12.    Financial institutions typically charge fees for wire-transferring funds to or from Mexico, and to or from the United States.  Additional fees often are charged for exchanging funds from Mexican pesos to United States dollars and from United States dollars to Mexican pesos.  In order to avoid these costs, businesses may choose to circumvent the legitimate financial system and employ a currency broker or "peso broker."

13.   A peso broker is an individual in Mexico who charges a reduced fee for converting United States dollars into pesos in Mexico through the use of an informal and illegitimate money transfer system.   To accomplish this, the peso broker works with an individual, such as a drug trafficker, who has United States currency (dollars) in the United States that he needs to bring to Mexico and convert to pesos but for which he cannot use the conventional financial system, typically because the funds are the proceeds of illegal activity.   The peso broker then finds business owners in Mexico who buy goods from vendors in the United States and need dollars in the United States to pay for those goods.   The peso broker arranges for the drug trafficker's dollars in the United States to be delivered to the United States-based vendors, where they are needed to pay for goods purchased by the Mexico-based customers.   In exchange the peso broker pays the drug trafficker in Mexico in pesos obtained from the Mexico-based businesses that purchased the goods.

**"Structuring"**

14.   Under federal law, whenever a nonfinancial trade or business receives over $10,000 in currency in one transaction or two or more related transactions, the business must file a notice with the Secretary of the Treasury known as an IRS Form 8300 ("Form 8300").   If the buyer of the merchandise or the business owner does not want such a report to be filed, they may attempt to evade that filing by creating multiple invoices for a single transaction, each under $10,000.

15.   Under federal law, whenever a cash transaction exceeding $10,000 occurs, as, for example, when a deposit of over $10,000 in

currency is made, the financial institution must file a notice with the Secretary of the Treasury known as a Currency Transaction Report ("CTR").   If the business does not want such a report to be filed, the business owner may attempt to evade that filing by making multiple deposits, each below $10,000 in value, at different times, at different bank locations, or into different accounts, thereby "structuring" his deposits.

### Ownership of Pacific Eurotex and Tax Structure

16.   Defendant PACIFIC EUROTEX was owned by two trusts: the Neman Family Irrevocable Trust, which owned a two-thirds share, and the Yedidia Investment Defined Benefit Trust, which owned a one-third share.

17.   The beneficiaries of the Neman Family Irrevocable Trust were defendant HERSEL NEMAN and UCC-1.

18.   The beneficiary of the Yedidia Investment Defined Benefit Trust was defendant MORAD NEMAN.

19.   Defendant MORAD NEMAN was trustee of both the Neman Family Irrevocable Trust and the Yedidia Investment Defined Benefit Trust, as well as other trusts for the benefit of members of the Neman Family.

20.   Defendant PACIFIC EUROTEX was a subchapter S corporation. As such, its gross sales and net income were reported on a Form 1120S, United States Income Tax Return for an S Corporation, which was filed with the IRS.   Taxable income generated by defendant PACIFIC EUROTEX was reported on IRS Schedule K-1s that were given to the owner trusts.   The income "flowed through" the corporation to the trusts without being taxed at the corporate level.   Instead, the net

5

1  income was reported as such by the two owner trusts and by the

2  beneficiaries of those owner trusts (who were subject to federal

3  income tax), on their individual joint income tax returns filed on

4  Form 1040, U.S. Individual Income Tax Return.

5  B.   OBJECTS OF THE CONSPIRACY

6      Beginning on a date unknown and continuing until on or about

7  September 9, 2014, in Los Angeles County, within the Central District

8  of California, and elsewhere, defendants PACIFIC EUROTEX, MORAD

9  NEMAN, HERSEL NEMAN, and VILLALOBOS, and others known and unknown to

10  the Grand Jury conspired and agreed with each other to knowingly and

11  intentionally conduct and attempt to conduct financial transactions

12  affecting interstate and foreign commerce, knowing that the property

13  involved in the financial transactions represented the proceeds of

14  some form of unlawful activity, and which property was, in fact, the

15  proceeds of a specified unlawful activity, that is, the unlawful

16  distribution of controlled substances, in violation of Title 21,

17  United States Code, Section 841(a)(1); and knowing that the

18  transactions were designed in whole and in part:

19      (1)   to conceal and disguise the nature, location, source,

20  ownership and control of the proceeds of specified unlawful activity,

21  in violation of Title 18, United States Code, Section

22  1956(a)(1)(B)(i); and

23      (2)   to avoid a transaction reporting requirement under Federal

24  law, in violation of Title 18, United States Code, Section

25  1956(a)(1)(B)(ii).

26

27

28                                6

C.    MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE
ACCOMPLISHED

The objects of the conspiracy were to be accomplished, in substance, as follows:

1.    Defendants MORAD NEMAN and HERSEL NEMAN would use defendant PACIFIC EUROTEX to receive large amounts of narcotics proceeds in the form of bulk United States currency as payment for outstanding orders from customers in Mexico and elsewhere.

2.    Defendant VILLALOBOS would receive, count, and record the amounts of bulk currency received.

3.    Defendant PACIFIC EUROTEX would fail to file, and defendants MORAD NEMAN, HERSEL NEMAN, and VILLALOBOS would cause defendant PACIFIC EUROTEX to fail to file, reports of currency transactions over $10,000 in a trade or business (IRS Form 8300), as required under Title 31, United States Code, Section 5331.

4.    Defendants PACIFIC EUROTEX, MORAD NEMAN, and HERSEL NEMAN would cause the currency to be deposited into the personal Wells Fargo bank account xxxxxx3136 of an unindicted co-conspirator ("UCC-2") for which defendant MORAD NEMAN exercised power of attorney, in structured amounts under $10,000, for the purpose of evading the CTR requirement.

D.    OVERT ACTS

In furtherance of the conspiracy, and to accomplish the objects of the conspiracy, on or about the following dates, defendants PACIFIC EUROTEX, MORAD NEMAN, HERSEL NEMAN, and VILLALOBOS, and others known and unknown to the Grand Jury, committed various overt

7

acts within the Central District of California, and elsewhere, including, but not limited to, the following:

1. On May 30, 2013, defendants PACIFIC EUROTEX, HERSEL NEMAN, and VILLALOBOS received approximately $50,000 in United States currency that was the proceeds of narcotics trafficking on behalf of customer "Abraham Dichy" as payment for merchandise.

2. On May 30, 2013, defendant PACIFIC EUROTEX failed to file, and defendants MORAD NEMAN, HERSEL NEMAN, and VILLALOBOS caused defendant PACIFIC EUROTEX to fail to file, a Form 8300 report for the receipt of United States currency over $10,000.

3. On the following dates, defendants PACIFIC EUROTEX, MORAD NEMAN, and HERSEL NEMAN made or caused the following structured deposits of a portion of the bulk currency received on May 30, 2013, into the Wells Fargo bank account xxxxxx3136 of defendant MORAD NEMAN and UCC-2:

| DATE CASH RECEIVED | AMOUNT OF CASH RECEIVED | STRUCTURED DEPOSIT AMOUNTS | DATES OF STRUCTURED DEPOSITS |
|---|---|---|---|
| 5/30/2013 | $50,000 | $ 8,800 | 5/31/2013 |
| | | $ 8,800 | 5/31/2013 |
| | | $ 8,800 | 6/3/2013 |
| | | $ 8,800 | 6/4/2013 |
| | | $ 8,800 | 6/5/2013 |
| | TOTAL | $44,000 | |

4. On June 7, 2013, defendants PACIFIC EUROTEX, HERSEL NEMAN, and VILLALOBOS received approximately $70,000 in United States currency that was the proceeds of narcotics trafficking on behalf of

customer "Mayer," also known as "Max Diaz" ("Mayer"), as payment for merchandise.

5.    On June 7, 2013, defendant PACIFIC EUROTEX failed to file, and defendants MORAD NEMAN, HERSEL NEMAN, and VILLALOBOS caused defendant PACIFIC EUROTEX to fail to file, a Form 8300 report for the receipt of United States currency over $10,000.

6.    On the following dates, defendants PACIFIC EUROTEX, MORAD NEMAN, and HERSEL NEMAN made or caused the following structured deposits of a portion of the bulk currency received on June 7, 2013, into the Wells Fargo bank account xxxxxx3136 of defendant MORAD NEMAN and UCC-2:

| DATE CASH RECEIVED | AMOUNT OF CASH RECEIVED | STRUCTURED DEPOSIT AMOUNTS | DATES OF STRUCTURED DEPOSITS |
|---|---|---|---|
| 6/7/2013 | $70,000 | $ 8,800 | 6/7/2013 |
| | | $ 8,800 | 6/7/2013 |
| | | $ 8,800 | 6/10/2013 |
| | | $ 8,800 | 6/11/2013 |
| | | $ 8,800 | 6/12/2013 |
| | | $ 8,800 | 6/14/2013 |
| | | $ 8,420 | 6/14/2013 |
| | TOTAL: | $ 61,220 | |

7.    On August 1, 2013, defendants PACIFIC EUROTEX, HERSEL NEMAN, and VILLALOBOS received approximately $100,000 in United States currency that was the proceeds of narcotics trafficking on behalf of customer "Mayer" as payment for merchandise.

8.    On August 1, 2013, defendant PACIFIC EUROTEX failed to file, and defendants MORAD NEMAN, HERSEL NEMAN, and VILLALOBOS caused defendant PACIFIC EUROTEX to fail to file, a Form 8300 report for the receipt of United States currency over $100,000.

9.    On the following dates, defendants PACIFIC EUROTEX, MORAD NEMAN, and HERSEL NEMAN made or caused the following structured deposits of a portion of the bulk currency received on August 1, 2013, into the Wells Fargo bank account xxxxxx3136 of defendant MORAD NEMAN and UCC-2:

| DATE CASH RECEIVED | AMOUNT OF CASH RECEIVED | STRUCTURED DEPOSIT AMOUNTS | DATES OF STRUCTURED DEPOSITS |
|---|---|---|---|
| 8/1/2013 | $100,000 | $ 8,800 | 8/1/2013 |
|  |  | $ 8,800 | 8/2/2013 |
|  |  | $ 8,800 | 8/5/2013 |
|  |  | $ 8,800 | 8/7/2013 |
|  |  | $ 8,800 | 8/7/2013 |
|  |  | $ 8,800 | 8/8/2013 |
|  | TOTAL | $52,800 |  |

10.    On August 9, 2013, defendants PACIFIC EUROTEX, HERSEL NEMAN, and VILLALOBOS received approximately $149,935 in narcotics proceeds on behalf of customer "Mayer" as payment for merchandise.

11.    On August 9, 2013, defendant PACIFIC EUROTEX failed to file, and defendants MORAD NEMAN, HERSEL NEMAN, and VILLALOBOS caused defendant PACIFIC EUROTEX to fail to file, a Form 8300 report for the receipt of United States currency over $10,000.

12.   On the following dates, defendants PACIFIC EUROTEX, MORAD NEMAN, and HERSEL NEMAN made or caused the following structured deposits of a portion of the bulk currency received on August 9, 2013, into the Wells Fargo bank account xxxxxx3136 of defendant MORAD NEMAN and UCC-2:

| DATE CASH RECEIVED | AMOUNT OF CASH RECEIVED | STRUCTURED DEPOSIT AMOUNTS | DATES OF STRUCTURED DEPOSITS |
|---|---|---|---|
| 8/9/2013 | $149,935 | $ 8,800 | 8/9/2013 |
| | | $ 8,800 | 8/13/2013 |
| | | $ 8,800 | 8/13/2013 |
| | | $ 8,800 | 8/14/2013 |
| | | $ 8,800 | 8/15/2013 |
| | | $ 8,800 | 8/16/2013 |
| | TOTAL: | $ 52,800 | |

COUNT TWO

[18 U.S.C. § 371]

A.    INTRODUCTION

The Grand Jury re-alleges and incorporates by reference as though fully set forth herein the allegations in paragraphs 1 through 20 of Section A of Count One of this First Superseding Indictment.

B.    OBJECT OF THE CONSPIRACY

Beginning on a date unknown to the Grand Jury, and continuing until on or about September 9, 2014, in Los Angeles County, within the Central District of California, and elsewhere, defendants PACIFIC EUROTEX CORP. ("PACIFIC EUROTEX"), MORAD NEMAN, also known as "Ben Neman" ("MORAD NEMAN"), HERSEL NEMAN, and MEHRAN KHALILI ("KHALILI"), and others known and unknown to the Grand Jury, conspired and agreed with each other to intentionally structure, assist in structuring, and cause to be structured, financial transactions into an account in a domestic financial institution, namely, Wells Fargo Bank, account number xxxxxx3136, for the purpose of evading the reporting requirements of Section 5313(a) of Title 31, United States Code, and the regulations promulgated thereunder, in violation of Title 31, United States Code, Section 5324(a)(3), and did so as part of a pattern of illegal activity involving more than $100,000 in a 12-month period, in violation of Title 31, United States Code, Section 5324(d)(2).

C.    MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE ACCOMPLISHED

The object of the conspiracy was to be accomplished, in substance, as follows:

12

1.   Defendants MORAD NEMAN and HERSEL NEMAN would use defendant PACIFIC EUROTEX to receive large amounts of narcotics proceeds in the form of bulk United States currency.

2.   Defendant MORAD NEMAN would deposit or would cause defendant KHALILI to deposit the United States currency into the personal Wells Fargo bank account xxxxxx3136 of an unindicted co-conspirator ("UCC-2") for which defendant MORAD NEMAN exercised power of attorney, in structured amounts, for the purpose of evading the Currency Transaction Report ("CTR") requirement.

D.   OVERT ACTS

In furtherance of the conspiracy, and to accomplish the object of the conspiracy, on or about the following dates, defendants PACIFIC EUROTEX, MORAD NEMAN, HERSEL NEMAN, and KHALILI, and others known and unknown to the Grand Jury, committed various overt acts within the Central District of California, and elsewhere, including, but not limited to, structuring currency transactions to avoid the currency reporting requirement on the following dates:

| OVERT ACT | DATE OF DEPOSIT | AMOUNT OF DEPOSIT |
|---|---|---|
| 1. | 1/03/2012 | $8,500 |
| 2. | 1/09/2012 | $2,900 |
| 3. | 1/11/2012 | $8,500 |
| 4. | 1/12/2012 | $7,900 |
| 5. | 1/13/2012 | $8,100 |
| 6. | 1/20/2012 | $7,700 |
| 7. | 1/25/2012 | $8,900 |
| 8. | 1/26/2012 | $8,400 |
| 9. | 1/27/2012 | $2,800 |
| 10. | 1/30/2012 | $8,000 |
| 11. | 1/31/2012 | $4,000 |
| 12. | 2/7/2012 | $7,935 |

| OVERT ACT | DATE OF DEPOSIT | AMOUNT OF DEPOSIT |
|-----------|-----------------|-------------------|
| 13. | 3/02/2012 | $8,000 |
| 14. | 3/05/2012 | $7,750 |
| 15. | 3/06/2012 | $6,500 |
| 16. | 3/09/2012 | $8,610 |
| 17. | 3/12/2012 | $6,500 |
| 18. | 3/16/2012 | $8,485 |
| 19. | 3/19/2012 | $8,600 |
| 20. | 3/22/2013 | $7,200 |
| 21. | 3/26/2012 | $7,800 |
| 22. | 3/30/2012 | $8,600 |
| 23. | 4/02/2012 | $7,800 |
| 24. | 4/03/2012 | $8,800 |
| 25. | 4/09/2012 | $8,200 |
| 26. | 4/10/2012 | $8,920 |
| 27. | 4/16/2012 | $6,000 |
| 28. | 4/19/2012 | $8,500 |
| 29. | 4/20/2012 | $8,500 |
| 30. | 4/23/2012 | $7,900 |
| 31. | 4/27/2012 | $8,900 |
| 32. | 5/02/2012 | $8,500 |
| 33. | 5/03/2012 | $8,000 |
| 34. | 5/08/2012 | $8,900 |
| 35. | 5/09/2012 | $6,620 |
| 36. | 5/10/2012 | $5,400 |
| 37. | 5/11/2012 | $8,860 |
| 38. | 5/16/2012 | $8,600 |
| 39. | 5/18/2012 | $6,500 |
| 40. | 5/25/2012 | $8,050 |
| 41. | 5/25/2012 | $8,900 |
| 42. | 5/31/2012 | $8,900 |
| 43. | 6/01/2012 | $8,000 |
| 44. | 6/04/2012 | $8,000 |
| 45. | 6/06/2012 | $7,450 |
| 46. | 6/08/2012 | $8,500 |
| 47. | 6/11/2012 | $8,900 |
| 48. | 6/12/2012 | $8,900 |
| 49. | 6/13/2012 | $8,600 |
| 50. | 6/15/2012 | $8,300 |

| OVERT ACT | DATE OF DEPOSIT | AMOUNT OF DEPOSIT |
|---|---|---|
| 51. | 6/19/2012 | $8,600 |
| 52. | 6/20/2012 | $8,460 |
| 53. | 6/25/2012 | $8,180 |
| 54. | 6/29/2012 | $8,340 |
| 55. | 7/03/2012 | $8,450 |
| 56. | 7/06/2012 | $8,000 |
| 57. | 7/09/2012 | $8,915 |
| 58. | 7/10/2012 | $8,000 |
| 59. | 7/12/2012 | $8,850 |
| 60. | 7/19/2012 | $7,740 |
| 61. | 7/20/2012 | $8,700 |
| 62. | 7/23/2012 | $8,950 |
| 63. | 7/25/2012 | $8,300 |
| 64. | 7/26/2012 | $8,800 |
| 65. | 7/31/2012 | $8,000 |
| 66. | 8/06/2012 | $8,500 |
| 67. | 8/07/2012 | $7,150 |
| 68. | 8/10/2012 | $8,800 |
| 69. | 8/13/2012 | $8,000 |
| 70. | 8/14/2012 | $7,260 |
| 71. | 8/15/2012 | $8,000 |
| 72. | 8/17/2012 | $8,700 |
| 73. | 8/20/2012 | $8,000 |
| 74. | 8/22/2012 | $8,800 |
| 75. | 8/24/2012 | $8,500 |
| 76. | 8/25/2012 | $7,395 |
| 77. | 8/30/2012 | $7,885 |
| 78. | 8/31/2012 | $8,400 |
| 79. | 9/04/2012 | $8,000 |
| 80. | 9/06/2012 | $8,780 |
| 81. | 9/07/2012 | $8,800 |
| 82. | 9/10/2012 | $8,800 |
| 83. | 9/11/2012 | $7,000 |
| 84. | 9/12/2012 | $7,500 |
| 85. | 9/14/2012 | $8,800 |
| 86. | 9/18/2012 | $8,000 |
| 87. | 9/20/2012 | $8,000 |
| 88. | 9/20/2012 | $6,200 |

| OVERT ACT | DATE OF DEPOSIT | AMOUNT OF DEPOSIT |
|---|---|---|
| 89. | 9/21/2012 | $8,800 |
| 90. | 9/25/2012 | $8,800 |
| 91. | 9/27/2012 | $8,500 |
| 92. | 10/02/2012 | $8,800 |
| 93. | 10/03/2012 | $8,600 |
| 94. | 10/03/2012 | $8,500 |
| 95. | 10/04/2012 | $8,500 |
| 96. | 10/10/2012 | $8,550 |
| 97. | 10/10/2012 | $6,500 |
| 98. | 10/11/2012 | $8,620 |
| 99. | 10/12/2012 | $8,000 |
| 100. | 10/16/2012 | $8,800 |
| 101. | 10/16/2012 | $8,800 |
| 102. | 10/17/2012 | $7,000 |
| 103. | 10/22/2012 | $8,700 |
| 104. | 10/26/2012 | $8,700 |
| 105. | 10/29/2012 | $7,000 |
| 106. | 10/30/2012 | $8,800 |
| 107. | 11/02/2012 | $8,000 |
| 108. | 11/02/2012 | $8,000 |
| 109. | 11/05/2012 | $8,000 |
| 110. | 11/07/2012 | $7,000 |
| 111. | 11/08/2012 | $8,800 |
| 112. | 11/09/2012 | $8,800 |
| 113. | 11/13/2012 | $8,800 |
| 114. | 11/14/2012 | $8,000 |
| 115. | 11/15/2012 | $8,700 |
| 116. | 11/16/2012 | $7,000 |
| 117. | 11/19/2012 | $7,733 |
| 118. | 11/21/2012 | $8,000 |
| 119. | 11/26/2012 | $8,271 |
| 120. | 11/29/2012 | $8,800 |
| 121. | 11/29/2012 | $8,800 |
| 122. | 11/30/2012 | $8,800 |
| 123. | 12/03/2012 | $8,051 |
| 124. | 12/04/2012 | $8,800 |
| 125. | 12/05/2012 | $8,800 |
| 126. | 12/06/2012 | $8,800 |

| OVERT ACT | DATE OF DEPOSIT | AMOUNT OF DEPOSIT |
|---|---|---|
| 127. | 12/11/2012 | $8,800 |
| 128. | 12/11/2012 | $8,800 |
| 129. | 12/14/2012 | $8,800 |
| 130. | 12/17/2012 | $8,500 |
| 131. | 12/19/2012 | $8,800 |
| 132. | 12/20/2012 | $8,500 |
| 133. | 12/20/2012 | $8,800 |
| 134. | 12/27/2012 | $8,800 |
| 135. | 12/27/2012 | $8,800 |
| 136. | 12/28/2012 | $8,800 |
| 137. | 1/02/2013 | $8,700 |
| 138. | 1/03/2013 | $8,050 |
| 139. | 1/04/2013 | $8,800 |
| 140. | 1/07/2013 | $8,800 |
| 141. | 1/09/2013 | $8,800 |
| 142. | 1/11/2013 | $8,300 |
| 143. | 1/11/2013 | $8,300 |
| 144. | 1/15/2013 | $8,800 |
| 145. | 1/15/2013 | $8,500 |
| 146. | 1/16/2013 | $8,800 |
| 147. | 1/17/2013 | $8,300 |
| 148. | 1/18/2013 | $7,500 |
| 149. | 1/22/2013 | $8,800 |
| 150. | 1/23/2013 | $8,800 |
| 151. | 1/25/2013 | $8,500 |
| 152. | 1/28/2013 | $8,800 |
| 153. | 1/30/2013 | $8,800 |
| 154. | 1/13/2013 | $8,800 |
| 155. | 2/01/2013 | $8,800 |
| 156. | 2/04/2013 | $8,800 |
| 157. | 2/05/2013 | $8,800 |
| 158. | 2/06/2013 | $8,800 |
| 159. | 2/07/2013 | $8,800 |
| 160. | 2/08/2013 | $8,800 |
| 161. | 2/11/2013 | $8,000 |
| 162. | 2/12/2013 | $8,000 |
| 163. | 2/14/2013 | $8,500 |
| 164. | 2/15/2013 | $8,000 |

| OVERT ACT | DATE OF DEPOSIT | AMOUNT OF DEPOSIT |
|---|---|---|
| 165. | 2/19/2013 | $8,000 |
| 166. | 2/21/2013 | $8,000 |
| 167. | 2/22/2013 | $8,000 |
| 168. | 2/22/2013 | $8,000 |
| 169. | 2/26/2013 | $8,000 |
| 170. | 2/27/2013 | $8,000 |
| 171. | 2/28/2013 | $8,000 |
| 172. | 3/01/2013 | $8,000 |
| 173. | 3/05/2013 | $8,000 |
| 174. | 3/06/2013 | $8,000 |
| 175. | 3/07/2013 | $8,000 |
| 176. | 3/08/2013 | $8,000 |
| 177. | 3/12/2013 | $8,000 |
| 178. | 3/13/2013 | $8,000 |
| 179. | 3/15/2013 | $8,000 |
| 180. | 3/19/2013 | $8,000 |
| 181. | 3/20/2013 | $8,000 |
| 182. | 3/21/2013 | $8,000 |
| 183. | 3/22/2013 | $8,800 |
| 184. | 3/25/2013 | $8,800 |
| 185. | 3/26/2013 | $8,800 |
| 186. | 3/27/2013 | $8,800 |
| 187. | 3/28/2013 | $8,800 |
| 188. | 3/29/2013 | $8,800 |
| 189. | 4/01/2013 | $8,800 |
| 190. | 4/02/2013 | $8,800 |
| 191. | 4/03/2013 | $8,800 |
| 192. | 4/04/2013 | $8,800 |
| 193. | 4/05/2013 | $8,800 |
| 194. | 4/08/2013 | $8,800 |
| 195. | 4/09/2013 | $8,800 |
| 196. | 4/10/2013 | $8,800 |
| 197. | 4/11/2013 | $8,800 |
| 198. | 4/12/2013 | $8,800 |
| 199. | 4/15/2013 | $8,800 |
| 200. | 4/16/2013 | $8,800 |
| 201. | 4/17/2013 | $8,800 |
| 202. | 4/19/2013 | $8,800 |

| OVERT ACT | DATE OF DEPOSIT | AMOUNT OF DEPOSIT |
|---|---|---|
| 203. | 4/19/2013 | $8,800 |
| 204. | 4/23/2013 | $8,800 |
| 205. | 4/24/2013 | $8,800 |
| 206. | 4/25/2013 | $8,800 |
| 207. | 4/29/2013 | $8,800 |
| 208. | 4/30/2013 | $8,800 |
| 209. | 4/30/2013 | $8,800 |
| 210. | 5/02/2013 | $8,800 |
| 211. | 5/02/2013 | $8,800 |
| 212. | 5/03/2013 | $8,800 |
| 213. | 5/07/2013 | $8,800 |
| 214. | 5/07/2013 | $8,800 |
| 215. | 5/08/2013 | $8,800 |
| 216. | 5/09/2013 | $8,800 |
| 217. | 5/10/2013 | $8,800 |
| 218. | 5/14/2013 | $8,800 |
| 219. | 5/14/2013 | $8,800 |
| 220. | 5/15/2013 | $8,800 |
| 221. | 5/16/2013 | $8,800 |
| 222. | 5/22/2013 | $8,800 |
| 223. | 5/23/2013 | $8,800 |
| 224. | 5/24/2013 | $8,800 |
| 225. | 5/28/2013 | $8,800 |
| 226. | 5/29/2013 | $8,800 |
| 227. | 5/31/2013 | $8,800 |
| 228. | 5/31/2013 | $8,800 |
| 229. | 6/03/2013 | $8,800 |
| 230. | 6/04/2013 | $8,800 |
| 231. | 6/05/2013 | $8,800 |
| 232. | 6/07/2013 | $8,800 |
| 233. | 6/07/2013 | $8,800 |
| 234. | 6/10/2013 | $8,800 |
| 235. | 6/11/2013 | $8,800 |
| 236. | 6/12/2013 | $8,800 |
| 237. | 6/14/2013 | $8,800 |
| 238. | 6/14/2013 | $8,420 |
| 239. | 6/18/2013 | $8,800 |
| 240. | 6/18/2013 | $8,800 |

| OVERT ACT | DATE OF DEPOSIT | AMOUNT OF DEPOSIT |
|---|---|---|
| 241. | 6/19/2013 | $8,800 |
| 242. | 6/20/2013 | $8,800 |
| 243. | 6/21/2013 | $8,800 |
| 244. | 6/24/2013 | $8,800 |
| 245. | 6/25/2013 | $8,800 |
| 246. | 6/26/2013 | $8,800 |
| 247. | 6/27/2013 | $8,800 |
| 248. | 7/02/2013 | $8,800 |
| 249. | 7/02/2013 | $8,800 |
| 250. | 7/05/2013 | $8,800 |
| 251. | 7/05/2013 | $8,800 |
| 252. | 7/08/2013 | $8,000 |
| 253. | 7/09/2013 | $8,800 |
| 254. | 7/10/2013 | $8,800 |
| 255. | 7/12/2013 | $8,800 |
| 256. | 7/12/2013 | $8,800 |
| 257. | 7/16/2013 | $8,800 |
| 258. | 7/16/2013 | $8,800 |
| 259. | 7/17/2013 | $8,800 |
| 260. | 7/19/2013 | $8,800 |
| 261. | 7/19/2013 | $8,800 |
| 262. | 7/22/2013 | $8,800 |
| 263. | 7/23/2013 | $8,800 |
| 264. | 7/24/2013 | $8,800 |
| 265. | 7/25/2013 | $8,800 |
| 266. | 7/26/2013 | $8,800 |
| 267. | 7/29/2013 | $8,800 |
| 268. | 7/30/2013 | $8,800 |
| 269. | 7/31/2013 | $8,800 |
| 270. | 8/01/2013 | $8,800 |
| 271. | 8/02/2013 | $8,800 |
| 272. | 8/05/2013 | $8,800 |
| 273. | 8/07/2013 | $8,800 |
| 274. | 8/07/2013 | $8,800 |
| 275. | 8/08/2013 | $8,800 |
| 276. | 8/09/2013 | $8,800 |
| 277. | 8/13/2013 | $8,800 |
| 278. | 8/13/2013 | $8,800 |

| OVERT ACT | DATE OF DEPOSIT | AMOUNT OF DEPOSIT |
|---|---|---|
| 279. | 8/14/2013 | $8,800 |
| 280. | 8/15/2013 | $8,800 |
| 281. | 8/16/2013 | $8,800 |
| 282. | 8/20/2013 | $8,800 |
| 283. | 8/21/2013 | $8,800 |
| 284. | 8/21/2013 | $8,800 |
| 285. | 8/23/2013 | $8,800 |
| 286. | 8/23/2013 | $8,800 |
| 287. | 8/26/2013 | $8,800 |
| 288. | 8/27/2013 | $8,800 |
| 289. | 8/28/2013 | $8,800 |
| 290. | 8/30/2013 | $8,800 |
| 291. | 8/30/2013 | $8,800 |
| 292. | 9/03/2013 | $8,800 |
| 293. | 9/04/2013 | $8,800 |
| 294. | 9/10/2013 | $8,800 |
| 295. | 9/10/2013 | $8,800 |
| 296. | 9/12/2013 | $8,800 |
| 297. | 9/13/2013 | $8,800 |
| 298. | 9/17/2013 | $8,800 |
| 299. | 9/18/2013 | $8,800 |
| 300. | 9/19/2013 | $8,800 |
| 301. | 9/20/2013 | $8,800 |
| 302. | 9/23/2013 | $8,800 |
| 303. | 9/24/2013 | $8,800 |
| 304. | 9/25/2013 | $8,800 |
| 305. | 9/26/2013 | $8,800 |
| 306. | 9/27/2013 | $8,800 |
| 307. | 9/30/2013 | $8,800 |
| 308. | 10/01/2013 | $8,800 |
| 309. | 10/02/2013 | $8,800 |
| 310. | 10/03/2013 | $8,800 |
| 311. | 10/04/2013 | $8,800 |
| 312. | 10/07/2013 | $8,800 |
| 313. | 10/08/2013 | $8,800 |
| 314. | 10/09/2013 | $8,800 |
| 315. | 10/10/2013 | $8,800 |
| 316. | 10/11/2013 | $8,800 |

| OVERT ACT | DATE OF DEPOSIT | AMOUNT OF DEPOSIT |
|---|---|---|
| 317. | 10/14/2013 | $8,800 |
| 318. | 10/15/2013 | $8,800 |
| 319. | 10/18/2013 | $8,800 |
| 320. | 10/21/2013 | $8,800 |
| 321. | 10/22/2013 | $8,800 |
| 322. | 10/23/2013 | $8,800 |
| 323. | 10/24/2013 | $8,800 |
| 324. | 10/28/2013 | $8,800 |
| 325. | 10/29/2013 | $8,800 |
| 326. | 10/30/2013 | $8,800 |
| 327. | 11/1/2013 | $8,800 |
| 328. | 11/4/2013 | $8,800 |
| 329. | 11/5/2013 | $8,800 |
| 330. | 11/6/2013 | $8,800 |
| 331. | 11/7/2013 | $8,800 |
| 332. | 11/8/2013 | $8,800 |
| 333. | 11/12/2013 | $8,800 |
| 334. | 11/13/2013 | $8,800 |
| 335. | 11/14/2013 | $8,800 |
| 336. | 11/15/2013 | $8,800 |
| 337. | 11/18/2013 | $8,800 |
| 338. | 11/19/2013 | $8,800 |
| 339. | 11/20/2013 | $8,800 |
| 340. | 11/21/2013 | $8,800 |
| 341. | 11/22/2013 | $8,800 |
| 342. | 11/25/2013 | $8,800 |
| 343. | 11/26/2013 | $8,800 |
| 344. | 11/27/2013 | $8,800 |
| 345. | 11/29/2013 | $8,800 |
| 346. | 12/02/2013 | $8,800 |
| 347. | 12/03/2013 | $8,800 |
| 348. | 12/04/2013 | $8,800 |
| 349. | 12/05/2013 | $8,800 |
| 350. | 12/09/2013 | $8,800 |
| 351. | 12/10/2013 | $8,800 |
| 352. | 12/11/2013 | $8,800 |
| 353. | 12/12/2013 | $8,800 |
| 354. | 12/13/2013 | $8,800 |

| OVERT ACT | DATE OF DEPOSIT | AMOUNT OF DEPOSIT |
|---|---|---|
| 355. | 12/16/2013 | $8,800 |
| 356. | 12/17/2013 | $8,800 |
| 357. | 12/18/2013 | $8,800 |
| 358. | 2/04/2014 | $7,900 |
| 359. | 2/05/2014 | $7,600 |
| 360. | 2/10/2014 | $7,700 |
| 361. | 2/11/2014 | $7,500 |
| 362. | 2/12/2014 | $7,000 |
| 363. | 2/13/2014 | $7,400 |
| | TOTAL | $3,071,330 |

COUNTS THREE THROUGH SIX

[31 U.S.C. §§ 5324(a)(3), 5324(d)(2)]

On or about the following dates, in Los Angeles County, within the Central District of California, and elsewhere, defendants PACIFIC EUROTEX CORP., MORAD NEMAN, also known as "Ben Neman," HERSEL NEMAN, and MEHRAN KHALILI knowingly structured, assisted in structuring, and caused to be structured, financial transactions with a domestic financial institution, namely, Wells Fargo Bank, for the purpose of evading the reporting requirements of Section 5313(a) of Title 31, United States Code, and the regulations promulgated thereunder, and did so while violating another law of the United States, namely, Title 18, United States Code, Section 1956, and as part of a pattern of illegal activity involving more than $100,000 in a 12-month period:

| Count | Date Cash Received | Total Cash Amount Received | Amount of Structured Cash Deposit | Deposit Date |
|---|---|---|---|---|
| 3. | 05/30/2013 | $50,000.00 | $8,800.00 | 05/31/2013 |
| | | | $8,800.00 | 05/31/2013 |
| | | | $8,800.00 | 06/03/2013 |
| | | | $8,800.00 | 06/04/2013 |
| | | | $8,800.00 | 06/05/2013 |
| Total Amount Structured: | | | $44,000.00 | |

24

| Count | Date Cash Received | Total Cash Amount Received | Amount of Structured Cash Deposit | Deposit Date |
|---|---|---|---|---|
| 4. | 06/07/2013 | $70,000.00 | $8,800.00 | 06/07/2013 |
| | | | $8,800.00 | 06/07/2013 |
| | | | $8,800.00 | 06/10/2013 |
| | | | $8,800.00 | 06/11/2013 |
| | | | $8,800.00 | 06/12/2013 |
| | | | $8,800.00 | 06/14/2013 |
| | | | $8,420.00 | 06/14/2013 |
| Total Amount Structured: | | | $61,220.00 | |

| Count | Date Cash Received | Total Cash Amount Received | Amount of Structured Cash Deposit | Deposit Date |
|---|---|---|---|---|
| 5. | 08/01/2013 | $100,000.00 | $8,800.00 | 08/01/2013 |
| | | | $8,800.00 | 08/02/2013 |
| | | | $8,800.00 | 08/05/2013 |
| | | | $8,800.00 | 08/07/2013 |
| | | | $8,800.00 | 08/07/2013 |
| | | | $8,800.00 | 08/08/2013 |
| Total Amount Structured: | | | $52,800.00 | |

| Count | Date Cash Received | Total Cash Amount Received | Amount of Structured Cash Deposit | Deposit Date |
|---|---|---|---|---|
| 6. | 08/09/2013 | $149,935.00 | $8,800.00 | 08/09/2013 |
| | | | $8,800.00 | 08/13/2013 |
| | | | $8,800.00 | 08/13/2013 |
| | | | $8,800.00 | 08/14/2013 |
| | | | $8,800.00 | 08/15/2013 |
| | | | $8,800.00 | 08/16/2013 |
| Total Amount Structured: | | | $52,800.00 | |

COUNTS SEVEN THROUGH TEN

[31 U.S.C. §§ 5331(a), 5322(b)]

On or about the following dates, in Los Angeles County, within the Central District of California, and elsewhere, defendant PACIFIC EUROTEX CORP. knowingly and willfully failed to file a report of domestic currency transaction over $10,000 in a trade or business, and did so while violating another law of the United States, namely, Title 18, United States Code, Section 1956, and as part of a pattern of illegal activity involving more than $100,000 in a 12-month period, upon receipt of the following currency amounts:

| Count | Date | Amount Received | Customer/Beneficiary |
|-------|------|-----------------|----------------------|
| 7. | 5/30/2013 | $50,000 | Abraham Dichy |
| 8. | 6/7/2013 | $70,000 | Mayer |
| 9. | 8/1/2013 | $100,000 | Mayer |
| 10. | 8/9/2013 | $149,935 | Mayer |

COUNT ELEVEN

[18 U.S.C. § 371]

A.    INTRODUCTION

The Grand Jury re-alleges and incorporates by reference as though fully set forth herein the allegations in paragraphs 1 through 20 of Section A of Count One of this First Superseding Indictment.

B.    OBJECT OF THE CONSPIRACY

Beginning on a date unknown to the Grand Jury, and continuing until on or about September 9, 2014, in Los Angeles County, within the Central District of California, and elsewhere, defendants MORAD NEMAN, also known as "Ben Neman" ("MORAD NEMAN"), HERSEL NEMAN, and ALMA VILLALOBOS ("VILLALOBOS"), and others known and unknown to the Grand Jury, conspired and agreed with each other to knowingly cause Pacific Eurotex Corp. to fail to file currency transaction reports for a trade or business as required by Title 31, United States Code, Section 5331(a), and the regulations promulgated thereunder, in violation of Title 31, United States Code, Section 5324(b)(1), and as part of a pattern of illegal activity involving more than $100,000 in a 12-month period, in violation of Title 31, United States Code, Section 5324((d)(2).

C.    MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE ACCOMPLISHED

The object of the conspiracy was to be accomplished, in substance, as follows:

The Grand Jury re-alleges and incorporates by reference as though fully set forth herein the allegations in paragraphs 1 through 3 of Section C of Count One of this First Superseding Indictment.

D.    <u>OVERT ACTS</u>

In furtherance of the conspiracy, and to accomplish the object of the conspiracy, on or about the following dates, defendants MORAD NEMAN, HERSEL NEMAN and VILLALOBOS, and others known and unknown to the Grand Jury, committed various overt acts within the Central District of California, and elsewhere, including, but not limited to, failing to file reports of currency transactions over $10,000 upon receipt of the following amounts of currency:

| Overt Act | Date | Amount Received | Customer/Beneficiary |
|-----------|------|-----------------|----------------------|
| 1. | 5/30/2013 | $50,000 | Abraham Dichy |
| 2. | 6/7/2013 | $70,000 | Mayer |
| 3. | 8/1/2013 | $100,000 | Mayer |
| 4. | 8/9/2013 | $149,935 | Mayer |

COUNTS TWELVE THROUGH FIFTEEN

[31 U.S.C. §§ 5331(a), 5324(b)(1), 5324(d)(2)]

On or about the following dates, in Los Angeles County, within the Central District of California, and elsewhere, defendants MORAD NEMAN, also known as "Ben Neman," HERSEL NEMAN, and ALMA VILLALOBOS knowingly caused Pacific Eurotex Corp. to fail to file a report of domestic currency transaction over $10,000 in a trade or business, and did so while violating another law of the United States, namely, Title 18, United States Code, Section 1956, and as part of a pattern of illegal activity involving more than $100,000 in a 12-month period, upon receipt of the following currency amounts:

| Count | Date | Amount Received | Customer/Beneficiary |
|-------|------|-----------------|----------------------|
| 12. | 5/30/2013 | $50,000 | Abraham Dichy |
| 13. | 6/7/2013 | $70,000 | Mayer |
| 14. | 8/1/2013 | $100,000 | Mayer |
| 15. | 8/9/2013 | $149,935 | Mayer |

COUNT SIXTEEN

[18 U.S.C. § 371]

A.    INTRODUCTION

The Grand Jury re-alleges and incorporates by reference as though fully set forth herein the allegations in paragraphs 1 through 20 of Section A of Count One of this First Superseding Indictment.

B.    OBJECT OF THE CONSPIRACY

From in or about 2012 through in or about October 2014, in Los Angeles County, within the Central District of California, and elsewhere, defendants MORAD NEMAN, also known as "Ben Neman" ("MORAD NEMAN"), and HERSEL NEMAN, and others known and unknown to the Grand Jury, knowingly and intentionally conspired and agreed with each other to defraud the United States by deceitful and dishonest means, for the purpose of impeding, impairing, obstructing, and defeating the lawful governmental functions of a government agency, namely, the Internal Revenue Service of the United States Treasury Department ("IRS"), in the ascertainment, computation, assessment, and collection of the revenue: to wit, income taxes.

C.    MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE ACCOMPLISHED

The object of the conspiracy was to be accomplished, in substance, as follows:

1.    Upon the sale of goods by Pacific Eurotex Corp. ("Pacific Eurotex"), defendant HERSEL NEMAN would create or would cause the creation of an invoice in the Pacific Eurotex MOD2 accounting system for the sale of those goods showing the amount of goods sold, the sale price of each item, and the total amount of the sale.

30

2.    Defendant HERSEL NEMAN would print or would cause the printing of the invoice showing the total amount of the sale.

3.    Defendant HERSEL NEMAN would alter or would cause the alteration of the invoice in the MOD2 accounting system to show the purchase price of the goods as $0.00 and the total amount of the sale as $0.00, but would not alter the amount of goods sold, thereby causing the MOD2 system to reflect a deduction of goods from inventory without a corresponding sale.

4.    Defendant HERSEL NEMAN would receive, and would authorize Alma Villalobos ("Villalobos") to receive, large amounts of United States currency in payment for open invoices for goods of Pacific Eurotex.

5.    At the direction of defendant HERSEL NEMAN, Villalobos would record cash payments received for certain foreign customers, on separate ledgers and would omit these receipts from the MOD2 accounting system.

6.    Defendant MORAD NEMAN would deposit or would cause the deposit of the currency received for certain foreign customers into the personal Wells Fargo bank account xxxxxx3136 of an unindicted co-conspirator ("UCC-2") for which defendant MORAD NEMAN exercised power of attorney ("the Wells Fargo account").

7.    Defendant MORAD NEMAN would transfer or would cause the transfer of portions of the currency from the Wells Fargo account to the Neman Family Irrevocable Trust, the Yedidia Investment Defined Benefit Trust, and other entities, of which defendants MORAD NEMAN, HERSEL NEMAN, and others, known and unknown to the Grand Jury, were the beneficiaries.

31

8.    Defendants MORAD NEMAN and HERSEL NEMAN, and others operating at their direction would omit from the records given to the accountants for Pacific Eurotex the notations of sales from certain foreign customers so those sales would not be included in the gross sales recorded on the Form 1120S, United States Income Tax Return for an S Corporation, for Pacific Eurotex.

9.    Defendants MORAD NEMAN and HERSEL NEMAN would thereby cause the accountant for Pacific Eurotex to omit the sales from the schedule K-1s, Shareholder's Share of Income, Deductions, and Credits, issued to the Neman Family Irrevocable Trust and the Yedidia Investments Defined Benefit Trust.

10.    Defendants MORAD NEMAN and HERSEL NEMAN would provide the inaccurate Schedule K-1s to their individual income tax preparer, knowing that the Schedule K-1s were inaccurate because they did not include the sales from certain foreign customers recorded outside of MOD2.

11.    Defendant MORAD NEMAN, beneficiary of the Yedidia Investment Defined Benefit Trust, would fail to report his share of the sales on his Form 1040, Individual Income Tax Return.

12.    Defendant MORAD NEMAN would then subscribe, swear to, and file his joint tax return, knowing that his tax return contained material misrepresentations about his total income in that the Schedule K-1 did not include his share of the sales.

13.    Defendants MORAD NEMAN and HERSEL NEMAN would disguise the cash payments received on the unreported sales on the Form 1040, Individual Income Tax Return for defendant HERSEL NEMAN, as income from a different source.

14.    Defendant HERSEL NEMAN would then subscribe, swear to, and file his individual tax return, knowing that his tax return contained material misrepresentations about his income in that the cash payments received on the unreported sales were disguised as income from a different source.

D.    OVERT ACTS

In furtherance of the conspiracy, and to accomplish the object of the conspiracy, on or about the following dates, defendants MORAD NEMAN and HERSEL NEMAN, and others known and unknown to the Grand Jury, committed various overt acts within the Central District of California, and elsewhere, including, but not limited to, the following:

**Falsification of Business Records: April 2013 Transaction**

1.    On April 6, 2013, at the direction of defendant HERSEL NEMAN, an unindicted co-conspirator ("UCC-3") created invoice number PE-0010672 in MOD2 recording the sale of 1,044 specified items at a price of $0.00 per item by Pacific Eurotex to "INVENTORY XZ."

2.    On April 8, 2013, at the direction of defendant HERSEL NEMAN, UCC-3 changed invoice number PE-0010672 in MOD2 to record the same sale of 1,044 specified items at their specified item prices to "INVENTORY XZ" in the total amount of $77,728.39.

3.    On April 9, 2013, at the direction of defendant HERSEL NEMAN, UCC-3 reversed the changes to invoice number PE-0010672 in MOD2 to reflect the same sale of 1,044 specified items at a price of $0.00 per item in the total amount of $0.00 to "INVENTORY XZ."

4.    On April 11, 2013, at the direction of defendant HERSEL NEMAN, Villalobos recorded sales of textiles by Pacific Eurotex to

"Max Diaz" with invoice number PE-32713 on a ledger outside of MOD2, also in the total amount of $77,728.39.

5.    On April 11, 2013, at the direction of defendant HERSEL NEMAN, UCC-3 saved the transaction for the sale of 1,044 specified items, at their specified item prices, for a total sale of $77,728.39 as invoice number PE-32713 onto a computer-generated document outside of MOD2.

6.    On May 12, 2013, at the direction of defendant HERSEL NEMAN, UCC-3 changed invoice number PE-0010672 in MOD2 to reflect the sale of the same 1,044 specified items for the specified sale price of each item, for a total sale of $77,728.39.

7.    On May 12, 2013, at the direction of defendant HERSEL NEMAN, UCC-3 printed invoice number PE-0010672 in MOD2 to the screen.

8.    On May 12, 2013, at the direction of defendant HERSEL NEMAN, UCC-3 reversed the changes made to invoice number PE-0010672 in MOD2 to reflect the sale price of the same 1,044 specified items as $0.00 each for a total sale amount of $0.00.

9.    On May 14, 2013, at the direction of defendant HERSEL NEMAN, UCC-3 changed the name on invoice number PE-0010672 in MOD2 to attribute the same 1,044 specified items to "INVENTORY CLEARING," with a total sales amount of $0.00.

**Falsification of Business Records: September 2013 Transaction**

10.    On September 18, 2013, at the direction of defendant HERSEL NEMAN, UCC-3 created invoice #PE-0015107 in MOD2.

11.    On September 20, 2013, at the direction of defendant HERSEL NEMAN, UCC-3 changed the date of invoice #PE-0015107 to September 23, 2013.

12.   On September 23, 2013, at the direction of defendant HERSEL NEMAN, UCC-3 amended invoice #PE-0015107 in MOD2 to reflect a sale to "ZZZ INVENTORY CLEARING" of 1,400 specified items in the total amount of $0.00.

13.   On September 23, 2013, at the direction of defendant HERSEL NEMAN, Villalobos recorded the sale of the same 1,400 specified items to "Max Diaz" with invoice number PE-092313, on a ledger outside of MOD2, in the amount of $134,927.23.

**Sales Omitted from Pacific Eurotex Tax Return**

14.   From January 2013 to December 2013, at the direction of defendant HERSEL NEMAN, Villalobos recorded sales of merchandise in the amount of $3,166,460.90, for the account of "Max Diaz," on a ledger outside of MOD2 ("the unreported sales").

15.   In 2014, at the direction of defendants MORAD NEMAN and HERSEL NEMAN, Villalobos transmitted the business records for Pacific Eurotex to the tax preparer for Pacific Eurotex, intentionally omitting the unreported sales.

16.   In October 2014, defendant MORAD NEMAN, as President and CEO of Pacific Eurotex, electronically subscribed to the tax return for Pacific Eurotex for the tax year 2013, intentionally omitting the unreported sales of $3,166,460.90.

17.   In 2014, defendant MORAD NEMAN, as President and CEO of Pacific Eurotex, and defendant HERSEL NEMAN, as CFO of Pacific Eurotex, caused the issuance of Schedule K-1s by Pacific Eurotex for tax year 2013 to the Yedidia Investment Defined Benefit Trust and the Neman Family Investment Trust, intentionally omitting the unreported sales, that is, approximately $3,166,460.

35

**Failure to Report Sales Received and False Reporting of Income**

18.   In October 2014, defendant MORAD NEMAN electronically subscribed to his United States Individual Income Tax Return Form 1040 for the tax year 2013 knowing that it omitted a portion of the income he received from Pacific Eurotex as the shareholder of the Yedidia Investment Defined Benefit Trust in the amount of approximately $1,055,487.

19.   On September 14, 2014, defendant MORAD NEMAN and an unindicted co-conspirator ("UCC-4") agreed with the tax preparer for defendant HERSEL NEMAN to falsely characterize the cash payments on the unreported sales received by Pacific Eurotex from "Max Diaz" in the amount of $1,923,070 on defendant HERSEL NEMAN's United States Individual Income Tax Return, Form 1040 as income from another source.

20.   In October 2014, defendant HERSEL NEMAN subscribed to his United States Individual Income Tax Return Form 1040 for the tax year 2013 knowing that it falsely reported the cash payments on the unreported sales received by Pacific Eurotex from "Max Diaz" in the amount of $1,923,070 as income from another source.

36

COUNT SEVENTEEN

[26 U.S.C. § 7206(1)]

On or about October 15, 2014, in Los Angeles County, within the Central District of California, and elsewhere, defendant MORAD NEMAN, also known as "Ben Neman" ("MORAD NEMAN"), a resident of Los Angeles County, California, knowingly and willfully made and subscribed to a materially false United States Individual Income Tax Return, Form 1040, for the calendar year 2013, which was prepared and signed in the Central District of California, filed with the Internal Revenue Service, and which defendant MORAD NEMAN verified as true, correct and complete by a written declaration made under penalty of perjury, and which tax return defendant MORAD NEMAN did not believe to be true and correct as to every material matter, in that the return falsely omitted income from Pacific Eurotex on the Yedidia Investment Defined Benefit Trust Schedule K-1 submitted therewith, when, in fact, as defendant MORAD NEMAN then well knew and believed, the additional income was omitted from the Schedule K-1.

37

COUNT EIGHTEEN

[26 U.S.C. § 7206(1)]

On or about October 15, 2014, in Los Angeles County, within the Central District of California, and elsewhere, defendant HERSEL NEMAN, a resident of Los Angeles County, California, knowingly and willfully made and subscribed to a materially false United States Individual Income Tax Return, Form 1040, for the calendar year 2013, which was prepared and signed in the Central District of California, filed with the Internal Revenue Service, and which defendant HERSEL NEMAN verified as true, correct and complete by a written declaration made under penalty of perjury, and which tax return defendant HERSEL NEMAN did not believe to be true and correct as to every material matter, in that the return falsely omitted income from Pacific Eurotex on the Neman Family Investment Trust Schedule K-1, and falsely identified income from Pacific Eurotex as income from a different source on the Schedule C submitted therewith, when, in fact, as defendant HERSEL NEMAN then well knew and believed, income recorded on the Schedule C was income from Pacific Eurotex that should have been included as such on the Schedule K-1.

COUNT NINETEEN

[26 U.S.C. § 7206(2)]

On or about September 14, 2014, in Los Angeles County, within the Central District of California, defendants MORAD NEMAN, also known as "Ben Neman" ("MORAD NEMAN"), and HERSEL NEMAN, residents of Los Angeles County, California, knowingly and willfully aided and assisted in, and procured, counseled, and advised the preparation and presentation under, and in connection with a matter arising under, the internal revenue laws, to the Internal Revenue Service, of a United States Individual Income Tax Return, Form 1040, of defendant HERSEL NEMAN and an unindicted co-conspirator ("UCC-2") for the calendar year 2013 which was false and fraudulent as to a material matter, in that it represented that UCC-2 received $1,923,070 in gross income for UCC-2's work in "consulting," whereas, as defendants MORAD NEMAN and HERSEL NEMAN then well knew and believed, the $1,923,070 was income from the Pacific Eurotex Corporation, and was not payment earned by UCC-2 working in consulting.

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 982(a)(1)(A)]

1.    The allegations contained in Count One of this First
Superseding Indictment are hereby realleged and incorporated by
reference for the purpose of alleging forfeitures pursuant to Title
18, United States Code, Section 982(a)(1)(A).

2.    Count One of this First Superseding Indictment alleges that
defendants PACIFIC EUROTEX CORP. ("PACIFIC EUROTEX"), MORAD NEMAN,
HERSEL NEMAN, and ALMA VILLALOBOS ("VILLALOBOS"), engaged in a
conspiracy to launder monetary instruments, in violation of Title 18,
United States Code, Section 1956(h).  Pursuant to Rule 32.2 of the
Federal Rules of Criminal Procedure, notice is hereby given to
defendants PACIFIC EUROTEX, MORAD NEMAN, HERSEL NEMAN, and VILLALOBOS
that the United States will seek forfeiture as part of any sentence
in accordance with Title 18, United States Code, Section 982, in the
event of any such defendant's conviction under Count One of this
First Superseding Indictment.  Upon such conviction, each defendant
that is convicted of this offense shall forfeit to the United States
any right, title, and interest in any property, real or personal,
involved in such offense, or any property traceable to such property,
including, but not limited to, following:

    a.    The sum of money equal to the total amount of property
involved in, or traceable to property involved in, those violations;
and,

    b.    All assets, including, without limitation, equipment,
inventory, accounts receivable, bank accounts and real property of

40

1  defendants PACIFIC EUROTEX, MORAD NEMAN, HERSEL NEMAN, and/or ALMA

2  VILLALOBOS involved in such violations.

3      3.    If more than one defendant is convicted of an offense, the

4  defendants so convicted are jointly and severally liable for the

5  amount involved in such offense.  By virtue of the commission of the

6  felony offense charged in Count One of this First Superseding

7  Indictment, any and all interest that a defendant has in the property

8  involved in, or traceable to property involved in, the offense is

9  vested in the United States and hereby forfeited to the United States

10  pursuant to Title 18, United States Code, Section 982(a)(1).

11      4.    If any of the property described above, as a result of any

12  act or omission of the defendants:

13          a.    cannot be located upon the exercise of due diligence;

14          b.    has been transferred or sold to, or deposited with, a

15  third party;

16          c.    has been placed beyond the jurisdiction of the court;

17          d.    has been substantially diminished in value; or

18          e.    has been commingled with other property that cannot be

19  divided without difficulty;

20  the United States of America shall be entitled to forfeiture of

21  substitute property pursuant to Title 21, United States Code,

22  Section 853(p), as incorporated by Title 18, United States Code,

23  Section 982(b)(1).

24

25

26

27

28                                    41

FORFEITURE ALLEGATION TWO

[31 U.S.C. § 5317(c)(1)(A)]

1.    The allegations contained in Counts Two through Fifteen of
this First Superseding Indictment are hereby realleged and
incorporated by reference for the purpose of alleging forfeiture
pursuant to Title 31, United States Code, Section 5317(c)(1)(A).

2.    Count Two alleges that defendants PACIFIC EUROTEX CORP.
("PACIFIC EUROTEX"), MORAD NEMAN, HERSEL NEMAN, and MEHRAN KHALILI
("KHALILI") conspired to structure financial transactions with a
domestic financial institution, that is, Wells Fargo Bank, in
violation of Title 18, United States Code, Section 371, and Title 31,
United States Code, Sections 5313(a), 5324(a), and 5324(d)(2).
Counts Three through Six allege that defendants PACIFIC EUROTEX,
MORAD NEMAN, HERSEL NEMAN, and KHALILI structured, assisted in
structuring, and caused to be structured, financial transactions with
a domestic financial institution, that is, Wells Fargo Bank, in
violation of Title 31, United States Code, Sections 5313(a),
5324(a)(3), and 5324(d)(2).  Count Seven alleges that defendant
PACIFIC EUROTEX failed to file reports of currency transactions in
excess of $10,000 for a nonfinancial trade or business in violation
of Title 31, United States Code, Sections 5331 and 5322(b).  Count
Eleven alleges that defendants MORAD NEMAN, HERSEL NEMAN, and ALMA
VILLALOBOS ("VILLALOBOS") conspired to cause PACIFIC EUROTEX to fail
to file reports of currency transactions in excess of $10,000 for a
nonfinancial trade or business in violation of Title 18, United
States Code, Section 371 and Title 31, United States Code, Sections
5331, 5324(b), and 5324(d)(2).  Counts Twelve through Fifteen allege

42

that defendants MORAD NEMAN, HERSEL NEMAN, and VILLALOBOS failed to file and caused PACIFIC EUROTEX to fail to file reports of currency transactions in excess of $10,000 (Forms 8300), in violation of Title 31, United States Code, Sections 5331(a) and 5324(b).  Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given to defendants PACIFIC EUROTEX, MORAD NEMAN, HERSEL NEMAN, VILLALOBOS, and KHALILI that the United States will seek forfeiture as part of any sentence in accordance with Title 31, United States Code, Section 5317(c)(1)(A), in the event of any such defendant's conviction of any of the foregoing offenses.  Upon such conviction, each defendant that is convicted of each such offense shall forfeit to the United States any right, title, and interest in any property, real or personal, involved in such offense, or any property traceable to such property, including, but not limited to, the following:

a.   The sum of money equal to the total amount of property involved in, or traceable to property involved in, each such violation; and

b.   All assets, including without limitation, equipment, inventory, accounts receivable, bank accounts and real property of defendants PACIFIC EUROTEX, HERSEL NEMAN, MORAD NEMAN, KHALILI, and VILLALOBOS.

3.   If more than one defendant is convicted of an offense, the defendants so convicted are jointly and severally liable for the amount derived from such offense.  By virtue of the commission of the felony offenses charged in Counts Two through Fifteen of this First Superseding Indictment, any and all interest that the defendant has

43

in the property involved in, or traceable to property involved in, the offenses is vested in the United States and hereby forfeited to the United States pursuant to Title 31, United States Code, Section 5317(c)(1)(A).

    4.    If any of the property described above, as a result of any act or omission of the defendant(s):

            a.    cannot be located upon the exercise of due diligence;

            b.    has been transferred or sold to, or deposited with, a third party;

            c.    has been placed beyond the jurisdiction of the court;

            d.    has been substantially diminished in value; or

            e.    has been commingled with other property that cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21,

1  United States Code, Section 853(p), as incorporated by Title 31,

2  United States Code, Section 5317(c)(1)(B).

A TRUE BILL

_____
Foreperson

SANDRA R. BROWN
Acting United States Attorney

LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division

KEVIN M. LALLY
Assistant United States Attorney
Chief, Organized Crime Drug
Enforcement Task Force Section

JULIE J. SHEMITZ
JAMIE A. LANG
PUNEET V. KAKKAR
Assistant United States Attorneys
Organized Crime Drug Enforcement
Task Force Section

45